IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Crim. No. 1:15-cr-167** |
| | : | |
| v. | : | |
| | : | |
| **MARTIN ALLEN MENTZER** | : | **Judge Sylvia H. Rambo** |

# **M E M O R A N D U M**

Before the court is Martin Mentzer's motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. For the reasons that follow, the motion will be granted in part and denied in part.

## I. **Background**

On August 12, 2015, the Government obtained a three-count indictment against Mentzer, alleging that he employed, persuaded, induced, enticed, or coerced B.T., a minor, to engage in sexually explicit conduct for the purposes of producing a visual depiction, in violation of 18 U.S.C. § 2251(a) (Count 1); that he knowingly distributed child pornography, in violation of 18 U.S.C. § 2252(a)(2) and (b)(1) (Count 2); and that he knowingly possessed child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2) (Count 3). On February 17, 2016, Mentzer pled guilty to Count 1, and on July 19, 2016, he was sentenced to 240 months in prison and five years supervised release.

On March 25, 2017, Mentzer timely filed his *pro se* § 2255 petition, in which he alleged violations of his Sixth Amendment right to effective assistance of counsel as well as prosecutorial misconduct. (*See* Doc. 55.) Specifically, Mentzer stated as follows:

> My attorney failed to adequately represent me by not raising objections to pertinent issues and the inappropriate conduct of the prosecutor. Furthermore, my attorney disregarded my requests to file a direct appeal and demanded more money to do so.
>
> * * *
>
> The prosecution unfairly prejudiced other members of the court against me by making unfair, untrue, and often blatantly false allegations/accusations which were not within the scope of the subject matter at hand. Prosecution furthermore attacked me on a personal level in inappropriate manners which had no bearing or relevance to the proceedings. Had the evidence been presented properly, by a prosecutor not hell-bent on ruining lives, I would have received a much lesser sentence or, potentially, no sentence at all.

(*Id*. at pp. 4-5 of 14.)

In response, the Government conceded that the court should hold a hearing on whether Mentzer directed his counsel to file an appeal, but requested that the court should dismiss the remaining issues. (Doc. 59, pp. 1-2.)

An evidentiary hearing on the § 2255 motion was held on December 14, 2017, at which time Mentzer was represented by court appointed counsel. A post-hearing brief was submitted in support of Mentzer's § 2255 motion on January 2, 2018, arguing (1) that trial counsel was ineffective for failing to file a notice of

appeal; (2) that trial counsel was ineffective for failing to investigate or introduce mitigation evidence; and (3) prosecutorial misconduct. (Doc. 72.) The Government has not responded.

## II. **Legal Standard**

To prevail on a claim of ineffective assistance of counsel, a petitioner must establish that (1) the performance of trial counsel fell below an objective standard of reasonableness, and (2) the performance of counsel unfairly prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687-88, 691 (1984). Both prongs must be established. *George v. Sively*, 254 F.3d 438, 443 (3d Cir. 2001) (citing *United States v. Nino*, 878 F.2d 101, 104 (3d Cir. 1989)).

The first *Strickland* prong requires the defendant to "establish . . . that counsel's performance was deficient." *Jermyn v. Horn*, 266 F.3d 257, 282 (3d Cir. 2001). Proving a deficiency in conduct "requires showing that counsel was not functioning as 'counsel' guaranteed by the Sixth Amendment." *Id.* (quoting *Strickland*, 466 U.S. at 687) (internal quotations omitted). "In assessing counsel's performance, 'every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" *Id.* "That is to say, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (quoting *Berryman*

*v. Morton*, 100 F.3d 1089, 1094 (3d Cir. 1996) (quoting *Strickland*, 466 U.S. at 689)). It is well settled that the benchmark for judging any claim of ineffectiveness of counsel is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

The second prong of *Strickland* requires a defendant to show that counsel's performance unfairly prejudiced the defendant, meaning that counsel's errors were so serious as to deprive the defendant of a trial whose result is reliable. *Id.* It is not enough to show that the error had some conceivable effect on the outcome of the proceeding, for virtually every act or omission would meet such a test. *Id.* Rather, the defendant must show there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Id.* at 694. A reasonable probability is sufficient to undermine confidence in the outcome of the trial. *Id.* Effectiveness of counsel applies to advise given by counsel during guilty plea discussions. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *United States v. Booth*, 432 F.3d 542, 547 (3d Cir. 2005).

### III. Discussion

#### a. Failure to File a Notice of Appeal

Mentzer argues that trial counsel's performance was constitutionally infirm because she failed to file a Notice of Appeal, thus precluding Mentzer from

4

pursuing a direct appeal. He argues that he and trial counsel only had a cursory conversation regarding his right to appeal immediately following sentencing and that she did not follow up with him to resolve doubts regarding his wishes.

The Supreme Court applied Strickland to counsel's failure to file an appeal in *Roe v. Flores-Ortega*, 528 U.S. 470 (2000). The Court recognized that counsel provides ineffective assistance by disregarding the client's explicit instructions to file an appeal. *Id*. at 477. In these instances, "[p]rejudice is presumed from counsel's failure to file a notice of appeal when so requested by a client." *Solis v. United States*, 252 F.3d 289, 293-94 (3d Cir. 2001). If the client did not specifically express a desire to appeal, the court must conduct a "'circumstances-specific reasonableness inquiry' regarding counsel's failure to file a notice of appeal. *Battaglini v. United States*, 198 F. Supp. 3d 465, 472 (E.D. Pa. 2016) (quoting *Flores-Ortega*, 528 U.S. at 478.)

The circumstance-specific reasonableness inquiry begins by considering the attorney-client consultation. *Flores-Ortega*, 528 U.S. at 478. "If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." *Id*. If counsel did not consult with the defendant and no notice of appeal was filed, counsel performed deficiently "when there is reason to think either (1) that a

5

rational defendant would want to appeal . . . , or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id*. at 480.

Additionally, the consultation itself can be deficient. The Supreme Court defined "consulting" as "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id*. at 478. As to the prejudice prong of *Strickland*, a defendant "must demonstrate that there is a reasonable probability that, but for counsel's [ineffective assistance], he would have timely appealed." *Id*. at 484.

Here, Mentzer and his trial counsel, Jennifer Wilson, Esquire, who was privately retained, both testified that the only conversation they had regarding his right to appeal took place immediately following his sentencing and that Mentzer did not direct Ms. Wilson to file an appeal at that time. Mentzer testified that he was discouraged by trial counsel's statements that appealing would be risky because it might result in a lengthier sentence and that she would require additional payments to represent him on appeal. He stated that he was agitated and shocked during the conversation.

Ms. Wilson likewise testified that following sentencing she discussed with Mentzer the probability of not being successful on appeal and that, while she would file a Notice of Appeal, she would require an additional fee to continue her representation or would contact the Federal Public Defenders office on his behalf.

6

She also told him that she would note the time period for filing a Notice of Appeal on her calendar and wait to hear from him regarding his wishes. She did not follow up with him regarding his decision, but she did receive a letter from him during the applicable time period in which he did not mention filing an appeal.

Where the decision to file an appeal is left open, counsel must make a reasonable effort to discover the defendant's wishes. *Battaglini v. United States*, 198 F. Supp. 3d 465, 472 (2016) (citing *Flores-Ortega*, 528 U.S. at 478). Further, the argument "that petitioner should have done more to contact Counsel, such as by writing him a letter, or could have written to the Court concerning his wish to file an appeal likewise casts aside the constitutionally imposed duty of counsel to consult with his or her client about the advantages or disadvantages of taking an appeal." *Id*. at 475.

Based on the foregoing, counsel's failure to follow through with ascertaining Mentzer's desire to take an appeal fell below an objective standard of reasonableness and was thus deficient. Accordingly, the court will provide Mentzer with the opportunity to file an appeal.

### b. Failure to Investigate, Develop or Introduce Evidence Regarding Risk of HIV Transmission

Mentzer claims that the sentencing proceeding distorted his health status and that his sentence would not have been so severe had his counsel presented evidence concerning the low risk of HIV transmission where the individual's viral

load[1] count is low. He indicates in his post-hearing brief that his HIV status was presented to the court by the probation officer in support of an upward departure for extreme conduct based upon an assumed exposure to "a communicable and potentially fatal, incurable disease," even though Mentzer has been receiving treatment for his HIV since 2005 and his viral count is low. (Doc. 72, p. 20 of 29.)

At the § 2255 hearing, Mentzer presented an affidavit by Karam C. Mounzer, M.D., an infectious disease specialist, who set forth, *inter alia*, the following conclusions of the Center for Disease Control concerning HIV transmissions: "Not all sex acts carry the same risk of transmission: i.) There is little to no risk of transmitting HIV from oral sex; ii.) Proper use of condoms during anal sex is a highly effective means of preventing the transmission of HIV . . ." (Ex. 1.)

In an interview, Mentzer admitted that the minor performed unprotected oral sex on Mentzer to the point of orgasm and that they engaged in anal on one occasion. He subsequently claimed that, while he attempted anal sex, no penetration occurred.

The court in fashioning a sentence considered the fact that Mentzer had HIV and performed sexual acts with a 13-year-old victim, while photographing the same. Notably, an upward departure was not given by this court. Indeed, Mentzer

---

[1] Viral load is the measure of the number of HIV virus particles in a milliliter of blood.

was sentenced in the middle of the guideline range. Post sentencing, this court has no scientific evidence that there is <u>no risk</u> of transmitting HIV from oral sex. While trial counsel did not present a report similar to Mr. Mounzer's or confer with an infectious disease expert, had a report like his been presented at the time of sentencing, it would have had no effect on the ultimate sentence. Therefore, counsel's performance did not deprive Mentzer of a fair sentencing hearing.

### c. Prosecutorial Misconduct – Violation of Fourth Amendment

Mentzer alleges that the prosecutors airing of his HIV status in open court during the sentencing hearing was an invasion of his privacy, and that it was at the sentencing hearing that his family became aware of his HIV status. He argues that, "[a]lthough [his] health status may have been relevant to this Honorable Court's sentencing determination, this could have been accomplished in a less violative manner." (Doc. 72, p. 27.)

This court believes that a § 2255 petition is not the proper avenue for asserting this claim. Accordingly, relief will be denied.

## IV. Conclusion

As set forth above, this court will grant the motion insofar as it will provide Mentzer the opportunity to file an appeal. However, the motion will be denied in all other respects.

                                                           s/Sylvia H. Rambo
                                                         SYLVIA H. RAMBO
                                                         United States District Judge

Dated: February 8, 2018